# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **TARGETSMART HOLDINGS, LLC,** ) | |
| ***et al.***, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action No. 19-312 (RMC)** |
| **v.** ) | |
| ) | |
| **GHP ADVISORS, LLC,** ***et al.***, ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## MEMORANDUM OPINION

TargetSmart Holdings, LLC of the District of Columbia complains that Boston-based GHP Advisors, LLC, d/b/a Good Harbor Partners, and Catalist, LLC of D.C., misappropriated TargetSmart's trade secrets under the guise of merger negotiations. TargetSmart alleges that Catalist obtained its trade secrets through GHP, which expressed interest in TargetSmart on behalf of anonymous donors to Democratic Party causes, when GHP actually represented Catalist. TargetSmart asserts that Catalist used the TargetSmart trade secrets to compete improperly and to defame TargetSmart. It seeks damages and injunctive relief.

This lawsuit was initially filed in the district court of Massachusetts. It was transferred here after Judge Douglas P. Woodlock granted Catalist's Motion to Dismiss for lack of personal jurisdiction. Judge Woodlock also transferred the case against GHP, over whom

jurisdiction was proper in Massachusetts, to D.C. Catalist's motion to dismiss from this Court is ripe.[1]

Counts I, II, III, VI, VIII, and IX of the Second Amended Complaint are directed, in part, to Catalist. The Court will grant its Motion to Dismiss as to Counts II, III, VI, VIII, and IX and deny it as to Count I.

## I. BACKGROUND

### A. The Parties

TargetSmart Holdings, LLC (TargetSmart) is a District of Columbia-based technology and consulting firm that specializes in providing Democratic and progressive campaigns, candidates, and organizations with data and software to help expand their audiences. Second Am. Compl. (SAC) [Dkt. 36] Introductory Statement, ¶¶ 1, 11.[2]

Catalist, LLC, is a District of Columbia-based firm that, like TargetSmart, focuses on serving Democratic and progressive candidates. *Id.* Introductory Statement, ¶¶ 4, 35. Catalist is a competitor of TargetSmart. *Id.* ¶ 35.

GHP Advisors, LLC, d/b/a Good Harbor Partners (GHP), is a Boston-based investment firm. *Id.* Introductory Statement.

---

[1] Catalist, LLC's Mot. to Dismiss Pls.' Second Am. Compl., or, in the Alternative, to Transfer Venue [Dkt. 38]; Mem. of Law in Supp. of Def. Catalist, LLC's Mot. to Dismiss Pls.' Second Am. Compl., or, in the Alternative, to Transfer Venue (Catalist Mot.) [Dkt. 39]; Pls.' Opp'n to Catalist LLC's Mot. to Dismiss Pls.' Second Am. Compl. for Lack of Personal Jurisdiction and Failure to State a Claim (Opp'n) [Dkt. 41]; Pls.' Redacted Suppl. Mem. of Law in Opp'n to Def. Catalist LLC's Mot. to Dismiss under Rule 12(b)(6) (Suppl. Opp'n) [Dkt. 63]; Def. Catalist, LLC's Reply to Pls.' Suppl. Mem. of Law in Opp'n to Catalist's Mot. to Dismiss under Rule 12(b)(6) (Suppl. Reply) [Dkt. 66].

[2] TargetSmart consists of two entities: TargetSmart Holdings, LLC, and TargetSmart Communications, LLC. TargetSmart Communications, LLC is a wholly-owned subsidiary of TargetSmart Holdings, LLC. Both entities are located at the same place of business in Washington, D.C. *Id.* ¶¶ 1-2.

## B. The Letter Agreement Between Catalist and GHP

In early November 2017, Catalist and GHP entered into a letter agreement (Letter Agreement) for GHP to "'serve as advisor [to Catalist] in connection with the potential acquisition of a specific, pre-identified target company.'" *Id.* ¶ 13; *see* Ex. 1, Catalist Mot., Letter Agreement [Dkt. 39-1] at 1, § 1. TargetSmart alleges that it was the "'pre-identified target company.'" SAC ¶ 14. The Letter Agreement stated that GHP would provide Catalist "with financial advice and assistance," including managing the due diligence process. Letter Agreement at 1, § 2. The Letter Agreement provided that GHP would keep Catalist "'informed of the activities undertaken by GHP'" and of "'all performance of Services required of GHP'" under the Agreement. SAC ¶ 19; Letter Agreement at 4, § 6. It further stated that GHP was not an employee or agent of Catalist and would perform services as an "independent contractor." Letter Agreement at 4, § 6.

## C. GHP Contacts TargetSmart

In December 2017, a third-party supplier emailed TargetSmart stating that it was aware of a potential new "'business opportunity.'" SAC ¶ 21. The supplier offered to introduce TargetSmart to GHP to obtain further details. *Id.* ¶ 22. TargetSmart had an initial call with GHP on December 13, 2017. GHP told TargetSmart that it had been retained by individual political donors who wanted to combine TargetSmart with other companies in order to improve the data infrastructure in the Democratic and progressive markets. *Id.* ¶ 24. Thereafter, TargetSmart and GHP entered into a Mutual Nondisclosure Agreement (Mutual NDA). *Id.* ¶ 27. The Mutual NDA allowed the parties to exchange non-public, confidential, trade secret and proprietary

information (Non-Public Information) but prevented both parties from using or disclosing such information without the other party's prior written consent. *Id.* ¶¶ 28-29.[3]

After the Mutual NDA was signed, GHP and TargetSmart scheduled an in-person meeting in Boston. *Id.* ¶ 31. In preparation for the meeting and at GHP's request, TargetSmart sent GHP a memorandum on December 20, 2017, which included Non-Public Information about TargetSmart's data, products, services, and clients, as well as information about its finances and possible growth opportunities. *Id.* ¶ 32. The memorandum specifically stated that the information was covered by the Mutual NDA. *Id.*

TargetSmart met with GHP on December 21, 2017. GHP again stated that it represented wealthy donors who wanted to combine established companies in the Democratic and progressive markets. *Id.* ¶ 33. GHP indicated that its clients were most interested in combining TargetSmart with its competitor, Catalist. *Id.* ¶ 35. TargetSmart told GHP that it would only consider a merger of TargetSmart with Catalist if the donors or funders acquired both companies, if TargetSmart remained in control, and if the Catalist leadership team would not have a role in the combined entity. *Id.*

Following the meeting, GHP notified TargetSmart that it would like to proceed with due diligence for a potential transaction. GHP asked for information about TargetSmart's book of business, its third-party relationships and vendor agreements, and its costs and expenses. *Id.* ¶ 36. TargetSmart advised GHP that it was uncomfortable with the request, as TargetSmart believed it exceeded the information required to appraise TargetSmart's business for purposes of

---

[3] The Second Amended Complaint states that "[u]nder the Mutual NDA, TargetSmart and GHP agreed that neither party would use or disclose Information to anyone 'other than its Representatives' without the disclosing party's prior written consent. The Mutual NDA defines 'Representatives' as a party's 'employees, agents, advisors or representatives' *only*." *Id.* ¶ 29.

a merger. *Id.* ¶ 37. TargetSmart asked GHP to provide a rough estimate of the proposed purchase price for TargetSmart's "political business" in exchange for access to TargetSmart's financials. *Id.* ¶¶ 37-39. GHP agreed to the proposal, "subject to further due diligence," and TargetSmart provided financial information to GHP. *Id.* ¶¶ 38-39. In January 2018, the very next month, GHP informed TargetSmart that TargetSmart's financials showed that it was "'bigger than expected'" and that GHP would need some time to raise capital to acquire TargetSmart. *Id.* ¶ 40.

### D. TargetSmart Learns of Third-Party Disclosures

On February 8, 2018, TargetSmart learned that a writer with ties to Laura Quinn, the Chief Executive Officer (CEO) of Catalist, "was contacting TargetSmart's employees and asking a number of pointed questions about TargetSmart and its relationship with certain specified clients." *Id.* ¶ 41. TargetSmart alleges that certain questions "were based upon [N]on-[P]ublic Information provided to GHP and covered by the Mutual NDA." *Id.*

TargetSmart asked GHP if the writer's inquiries were part of GHP's due diligence or if the writer were acting for Catalist. GHP stated that "the inquiries were not part of the due diligence process" and that "they would be 'shocked' if Catalist was [sic] behind the writer's inquiries." *Id.* ¶ 44. TargetSmart then contacted Mike Podhorzer, a member of Catalist's Board of Directors, and repeated its concerns about the inquiries and potential disclosures by Ms. Quinn. Mr. Podhorzer stated that he would speak to Ms. Quinn. *Id.* ¶ 45. When he called back, Mr. Podhorzer "stated that he did not agree with Ms. Quinn's actions, and promised that the inquiries would stop." *Id.*

On February 21, 2018, TargetSmart discovered that a third-party source had told a TargetSmart client that "Catalist was in the process of buying TargetSmart." *Id.* ¶ 46.

TargetSmart contacted GHP and again expressed its concerns about compliance with the Mutual NDA. GHP responded that it would "'reinforce'" confidentiality with its clients. *Id.* ¶ 47.

### E. March 2018 Meeting Between TargetSmart, GHP and Catalist

On March 14, 2018, TargetSmart met with GHP and Catalist in the District of Columbia to discuss the potential acquisition. *Id.* ¶¶ 49-50. Catalist was represented at the meeting by its Board Members Mark Steitz and Mr. Podhorzer. *Id.* ¶ 50. At the outset of the meeting, Mr. Podhorzer stated that he was not covered by an NDA and offered to leave the room during the discussion. *Id.* ¶ 51.[4] GHP then explained to TargetSmart that it could not raise enough capital for the acquisition because of TargetSmart's size. *Id.* ¶ 53. Mr. Steitz thanked TargetSmart for participating in "'the process'" and stated that Catalist was "'respectful' . . . of the NDA." *Id.* However, Mr. Steitz further indicated that one of Catalist's funders had "'broke[n] the NDA.'" *Id.* TargetSmart asked who else at Catalist had received TargetSmart's Non-Public Information. TargetSmart was told that Mr. Steitz had received all of the Non-Public Information and that Ms. Quinn had received some of it. *Id.* ¶ 55.

### F. TargetSmart Seeks Assurances From GHP and Catalist

On April 10, 2018, TargetSmart sent GHP a letter in which it accused GHP of violating the Mutual NDA. TargetSmart demanded that GHP comply with certain requests including return of all Non-Public Information. *Id.* ¶ 59. In response, GHP denied that it had breached the Mutual NDA but at the same time admitted that it had shared the Non-Public Information with Mr. Steitz and Ms. Quinn. GHP stated that both Catalist individuals were

---

[4] The Second Amended Complaint suggests that Mr. Podhorzer did not leave the room during the meeting. *See id.* ¶ 54 (referencing "Mr. Podhorzer's presence and statements made at the meeting").

bound by separate NDAs with TargetSmart and, further, that GHP had destroyed all of the Non-Public Information and had instructed Catalist to do the same. *Id.* ¶¶ 60, 62-63.

With its response, GHP enclosed documents that indicated that Catalist had agreed to NDAs with TargetSmart. TargetSmart alleges that GHP had altered the Mutual NDA signed by TargetSmart by replacing GHP's signature line with a signature line for Mr. Steitz and Ms. Quinn but retaining a signature line for TargetSmart.[5] *Id.* ¶ 61. TargetSmart asserts that "Catalist never received countersigned copies of the false NDAs (or any true NDAs) signed by a TargetSmart representative because TargetSmart was not in fact involved in the creation of the false NDAs and was unaware of their creation until receiving the letter from GHP." *Id.* TargetSmart further argues that "[t]he supposed [NDAs] so blatantly misrepresent their true nature that Catalist knew or should have known that TargetSmart did not request that Catalist or any of its representatives sign an NDA with TargetSmart." *Id.*

On April 13, 2018, TargetSmart wrote to Catalist and asserted that Catalist was unlawfully using TargetSmart's Non-Public Information to compete with TargetSmart. *Id.* ¶ 65. TargetSmart demanded that Catalist comply with several requests, including providing the identity of persons to whom TargetSmart's business information had been disclosed. Catalist responded that both Ms. Quinn and Mr. Steitz had received Non-Public Information. *Id.* ¶¶ 67-68. Catalist clarified that Mr. Steitz had received Non-Public Information "in his role as 'liaison' with 'Catalist Investors' and 'Representatives of TargetSmart.'" *Id.* ¶ 68. Catalist represented that Mr. Steitz had not distributed or shared any Non-Public Information. However, Catalist did

---

[5] In its Motion to Dismiss TargetSmart's Second Amended Complaint, Catalist provided copies of two form non-disclosure agreements. Ex. 2, Catalist Mot., Non-Disclosure Agreements [Dkt. 39-2]. One of the form agreements appears to be signed by Ms. Quinn while the other appears to be signed by Mr. Steitz. Although both form agreements contain a signature block for Jeffery Ferguson from TargetSmart Holdings, neither is signed by Mr. Ferguson.

not make the same representation about Ms. Quinn. *Id.* Catalist told TargetSmart that it had destroyed all TargetSmart materials. *Id.* ¶ 69.

### G. Procedural History

On June 28, 2018, TargetSmart filed suit against GHP and Catalist in the U.S. District Court for the District of Massachusetts. Compl. [Dkt. 1]. TargetSmart brought claims against GHP and Catalist for misappropriation of trade secrets, in violation of the federal Defend Trade Secrets Act (occasionally, DTSA), 18 U.S.C. § 1831 *et seq*., the Massachusetts Trade Secrets Act,[6] the Massachusetts Unfair and Deceptive Practices Act,[7] and Massachusetts common law. Compl. ¶¶ 67-91, ¶¶ 128-33. TargetSmart raised additional claims for breach of contract, breach of the covenant of good faith and fair dealing, and fraudulent misrepresentation by GHP, *id.* ¶¶ 92-107, ¶¶ 122-27; tortious interference with contractual relations by Catalist, *id.* ¶¶ 108-14; and unjust enrichment by GHP and Catalist. *Id.* ¶¶ 115-21.

On September 11, 2018, GHP filed its Answer and Catalist filed a motion to dismiss for lack of personal jurisdiction, on *forum non conveniens* grounds, and for failure to state a claim. TargetSmart filed a First Amended Complaint on October 2, 2018. The First Amended Complaint dropped the claim for tortious interference with contractual relations and added a defamation claim against Catalist. GHP answered and Catalist again filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim in mid-October 2018. Shortly after, TargetSmart filed, and the court granted, a motion to amend the complaint further in nonmaterial ways.[8] TargetSmart filed its Second Amended Complaint on December 13, 2018.

---

[6] Mass. Gen. Laws, ch. 93, §§ 42 and 42A.

[7] Mass. Gen. Laws ch. 93A, §§ 2 and 11.

[8] *See* Pls. Mot. for Leave to Am. Compl. to Correct Scrivener's Error [Dkt. 28]. The motion stated that Paragraph 61 of the First Amended Complaint mistakenly alleged that "*GHP* knew or

The Second Amended Complaint is the operative pleading before this Court. SAC [Dkt. 36]. Count I alleges misappropriation of trade secrets under the federal Defend Trade Secrets Act against both Defendants; Count II alleges misappropriation of trade secrets in violation of Massachusetts common law against both Defendants; Count III alleges misappropriation of trade secrets under the Massachusetts Trade Secrets Act against both Defendants; Count IV alleges breach of contract against GHP; Count V alleges breach of the covenant of good faith and fair dealing against GHP; Count VI alleges unjust enrichment against both Defendants; Count VII alleges fraudulent misrepresentation against GHP; Count VIII alleges violations of the Massachusetts Unfair and Deceptive Practices Act against both Defendants; and Count IX alleges defamation against Catalist. Only the immediate Catalist motion to dismiss [Dkts. 38 and 39] will be addressed here, involving that Defendant and Counts I, II, III, VI, VIII and IX.

On December 20, 2018, Catalist filed a motion to dismiss in Massachusetts or, in the alternative, to transfer venue to the District of Columbia. It argued that the Massachusetts District Court lacked personal jurisdiction over Catalist and that all counts against Catalist were infirm. In the alternative, Catalist asked that the case against it be transferred to D.C. for the convenience of the parties. GHP filed an opposition to transfer on January 4, 2019, but took no position with regard to personal jurisdiction or failure to state a claim. TargetSmart opposed Catalist's motion to dismiss on January 11, 2019.

should have known that TargetSmart did not request that Catalist or any of its representatives sign an NDA with TargetSmart," when TargetSmart meant to allege that "*Catalist* knew or should have known that TargetSmart did not request that Catalist or any of its representatives sign an NDA with TargetSmart." *Id.* at 1 (emphasis added).

On January 23, 2019, Judge Woodlock held a hearing on Catalist's motion, during which he indicated an inclination to transfer. *See* 1/23/2019 Docket Entry; *see also TargetSmart Holdings, LLC v. GHP Advisors, LLC*, 366 F. Supp. 3d 195, 205 (D. Mass 2019). TargetSmart responded that it would not oppose transfer to D.C. if Judge Woodlock found that personal jurisdiction over Catalist were unavailable in Massachusetts. *TargetSmart*, 366 F. Supp. 3d at 205. GHP objected that venue would not lie over GHP in D.C. if the case were transferred in its entirety. *Id.* GHP filed a supplemental opposition arguing that Massachusetts was a preferable venue to D.C. TargetSmart responded by asking Judge Woodlock to retain the case against GHP, even if he transferred the case against Catalist to D.C.

Judge Woodlock issued a Memorandum and Order on February 6, 2019. *See TargetSmart*, 366 F. Supp. 3d 195. The court found that Catalist lacked sufficient contacts with Massachusetts to establish personal jurisdiction in the Commonwealth. *See id.* at 213 ("The three factors set forth in *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138 (1st Cir. 1995), all indicate that the exercise of personal jurisdiction as to Catalist by this court would be improper under the Due Process Clause."). Therefore, Judge Woodlock transferred the case against Catalist to D.C. *Id.* at 214.[9] Additionally, while he recognized that personal jurisdiction existed over GHP, which is based in Boston, Judge Woodlock transferred all claims against GHP

---

[9] *See* 28 U.S.C. § 1631 (providing that if a "court finds that there is a want of jurisdiction [in a civil action], the court shall, if it is in the interest of justice, transfer such action . . . to any such court . . . in which the action . . . could have been brought at the time it was filed"); 28 U.S.C. § 1406(a) (providing that a court may "transfer [a] case to any district or division in which it could have been brought" if it "lay[s] venue in the wrong division or district" and transfer is "in the interest of justice").

to D.C. *Id.* at 219.[10]  Judge Woodlock found that the D.C. District Court would have personal jurisdiction over all parties. *TargetSmart*, 366 F. Supp. 3d at 216.

While he did not directly rule on whether TargetSmart stated a claim against Catalist under Massachusetts law, Judge Woodlock opined that Massachusetts law did not apply. *See id.* at 212 n.2. Judge Woodlock noted that the question "ha[d] three distinct dimensions . . . because TargetSmart has brought three kinds of state law claims against Catalist—claims under the common law of torts, claims under the common law of contracts, and claims under Massachusetts statutory law." *Id.* He suggested that application of Massachusetts choice-of-law principles would favor applying D.C. law to the common-law claims, rather than Massachusetts law, because D.C. appeared to have a greater interest in adjudicating the dispute. *Id.* (citing *Graham v. Malone Freight Lines, Inc.*, 948 F. Supp. 1124, 1131 (D. Mass. 1996)). In this regard, Judge Woodlock observed that "the wrong allegedly took place in the District of Columbia, where Catalist is headquartered," and that "'various choice-influencing considerations,'" such as the place of business of the parties, favored the application of D.C. law. *Id.*

With respect to the Massachusetts statutory claims, Judge Woodlock noted that both the Massachusetts Trade Secrets Act and the Massachusetts Unfair and Deceptive Practices Act have narrow jurisdictional limits. *See id.* (citing Mass. Gen. Laws ch. 93, § 3 (Massachusetts Trade Secrets Act) (applying to "any course of conduct, pattern of activity, or activities [that] occur and have their competitive impact primarily and predominantly within [Massachusetts]"); Mass. Gen. Laws ch. 93A, § 11 (Massachusetts Unfair and Deceptive Practices Act) (requiring

---

[10] *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").

that "the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within [Massachusetts]."). He then stated that "[s]ince TargetSmart has not alleged that Catalist's violations of the two statutes took place in Massachusetts, Massachusetts statutory law does not appear to apply." *Id.*

Following transfer to D.C., this Court held a status hearing on May 8, 2019. During the status hearing, TargetSmart requested leave to address the impact of Judge Woodlock's transfer order on Catalist's pending motion to dismiss, to which this Court agreed. TargetSmart's Supplemental Reply argues that Count VIII, alleging that Catalist violated the Massachusetts Unfair and Deceptive Practices Act, should not be dismissed. It also contends that Judge Woodlock's statements about the scope of Massachusetts law should not control this Court's treatment of Count VIII because the record was incomplete and is now being developed in discovery, which has revealed a significant connection to Massachusetts.[11] TargetSmart urges the Court to rule only after a full record is developed and not on a motion to dismiss.

In reply, Catalist argues that Judge Woodlock found that Catalist is not subject to personal jurisdiction in Massachusetts and that this finding is fatal to TargetSmart's Massachusetts statutory claims. Catalist further insists that discovery has not revealed any additional connections to Massachusetts that Judge Woodlock did not consider. Finally, Catalist asserts that TargetSmart may not replead its Massachusetts statutory claims under D.C. law because such claims would be barred by the District of Columbia Uniform Trade Secrets Act (occasionally, DCUTSA), D.C. Code § 36-401 *et seq.*

---

[11] TargetSmart does not advance further argument about its other claims against Catalist in its Supplemental Opposition. TargetSmart notes that "Catalist's other Motion to Dismiss arguments fail for the reasons stated in TargetSmart's prior briefing on the Motion to Dismiss." Suppl. Opp'n at 1 n.1 (citing Opp'n at 15-20).

TargetSmart moved for leave to respond to the Reply and Catalist opposed. The Court will accept TargetSmart's Surreply. *See* Ex. A, Pls. Mot. for Leave to File Resp. to Def.'s New Arguments on Def.'s Mot. to Dismiss, Pls. Resp. to Def.'s New Arguments on Def's Mot. to Dismiss (Surreply) [Dkt. 69-1]. It reiterates TargetSmart's argument that Judge Woodlock's jurisdictional rulings are not relevant to this Court's treatment of Count VIII. It further argues that the D.C. Uniform Trade Secrets Act does not bar Count VIII.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual information, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in favor of the plaintiff. *Sissel v. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). A court need not accept inferences drawn by a plaintiff if such inferences are not supported by facts set out in the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Further, a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678. In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

# III. ANALYSIS

## A. Jurisdiction

The Court has jurisdiction over Count I, alleging that Catalist violated the federal Defend Trade Secrets Act under 28 U.S.C. § 1331, which grants jurisdiction to federal district courts over "all civil actions arising under the Constitution, laws or treaties of the United States." When a district court has original jurisdiction over a claim, it has "supplemental jurisdiction over all other claims that are so related to [those] claims . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Claims are from the same "case or controversy" when they "'derive from a common nucleus of operative fact,'" such that the plaintiff would "'ordinarily be expected to try them all in one judicial proceeding.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 580 (2005) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). If the supplemental claims arise from the same case or controversy, a federal court decides whether to exercise its discretion to assert jurisdiction over the remaining claims by considering whether judicial economy, convenience, and fairness to litigants favor federal litigation. *Osborn v. Haley*, 549 U.S. 225, 245 (2007) (citing *Gibbs*, 383 U.S. at 726).

Here, the allegations underlying the remaining common law and Massachusetts statutory claims derive from a common set of facts concerning (1) merger discussions between TargetSmart and GHP; and (2) the alleged acquisition and dissemination of Non-Public Information by GHP and Catalist. Judicial economy counsels in favor of considering these claims in the same lawsuit. The Court concludes that its exercise of supplemental jurisdiction over the remaining counts is appropriate.

The Court also has jurisdiction over all parties. Under the D.C. Code, a District of Columbia court "may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of

14

Columbia as to any claim for relief." D.C. Code § 13-422. Both TargetSmart and Catalist are headquartered in the District of Columbia. As a result, the District of Columbia may exercise general jurisdiction over each of them. *See Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509-10 (D.C. Cir. 2002) (noting that general jurisdiction is permissible "if the defendant's business contacts with the forum are 'continuous and systematic.'" (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).

The Court finds that it also has jurisdiction over GHP for this lawsuit. District of Columbia law provides, in relevant part, that D.C. courts may exercise "so-called 'specific jurisdiction' over a person for claims that arise from the person's 'transacting any business' in the District." *Gorman*, 293 F.3d at 509 (citing D.C. Code § 13-423(a)(1)). It is well-established that "the 'transacting any business' clause has been interpreted to provide jurisdiction to the full extent allowed by the Due Process Clause." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995). Due process requires "'minimum contacts' between the defendant and the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

GHP has sufficient "minimum contacts" with the District of Columbia to permit the exercise of personal jurisdiction here. In November 2017, GHP entered into a Letter Agreement with Catalist, a D.C. firm, pursuant to which GHP would serve as advisor to Catalist for the potential acquisition of a target company. SAC ¶ 13. TargetSmart, another D.C. firm, claims that it was the target. *Id.* ¶ 14. GHP initiated contact with TargetSmart in December

2017.  *Id.* ¶¶ 22-24.  Following the initial conversation, GHP and TargetSmart entered into a

Mutual NDA pursuant to which TargetSmart shared Non-Public Information with GHP.  *Id.*

¶¶ 27-32.  GHP had multiple discussions with TargetSmart over the next several months about

the potential transaction, including conversations in which TargetSmart raised concerns about the

potential disclosure of Non-Public Information.  *See id.* ¶¶ 33-48.  In March 2018, GHP met with

TargetSmart and Catalist in D.C., during which TargetSmart learned that Catalist had received

TargetSmart's Non-Public Information.  *Id.* ¶¶ 49-55.  All of these pleaded facts indicate that

GHP could "reasonably anticipate being haled into court" in D.C. relating to its dealings with

TargetSmart and Catalist.  *See World-Wide Volkswagen Corp.*, 444 U.S. at 297.

### B.  Applicable Law for State-Law Claims Against Catalist

"When a federal court must decide issues regulated only by state law, the court

'applies the forum state's choice-of-law rules.'"  *DuBois v. Washington Mut. Bank*, No. 10-5333,

2012 WL 5882567, at *1 (D.C. Cir. Nov. 8, 2012) (quoting *A.I. Trade Fin., Inc. v. Petra Int'l

Banking Corp.*, 62 F.3d 1454, 1463 (D.C. Cir. 1995)).  While exceptions to this rule exist where

a case was transferred for the convenience of the parties under 28 U.S.C. § 1404(a), *see Van

Dusen v. Barrack*, 376 U.S. 612, 639 (U.S. 1964), "[t]he choice of law rules of the state of a

transferring court does not follow the case to a transferee court if the originating court does not

have personal jurisdiction over all defendants."  *Mar-Jac Poultry, Inc. v. Katz*, 773 F. Supp. 2d

103, 112 n.4 (D.D.C. 2011).  Such is the situation in this matter.  This Court will employ the

choice-of-law rules of the District of Columbia in evaluating Catalist's Motion to Dismiss.

"The District of Columbia follows a modified 'interest analysis' approach to

choice of law.  Under this approach, the first step is to determine whether a 'true conflict'

exists—that is, whether more than one jurisdiction has a potential interest in having its law

applied and, if so, whether the law of the competing jurisdictions is different." *GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992) (citing *Fowler v. A & A Co.*, 262 A.2d 344, 348 (D.C. 1970)). If there is no "true conflict," the Court applies D.C. law by default. *Id.* If, however, there is a "true conflict" between jurisdictions, the Court considers which of the relevant jurisdictions has the "more substantial interest" in having its law applied, *id.*, and the more significant relationship to the litigation. *See Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 842 (D.C. Cir. 2009).

Catalist argues that TargetSmart's claims under Massachusetts statutory and common law must be dismissed because Massachusetts law does not apply. Catalist Mot. at 2; Suppl. Reply at 1. TargetSmart specifically argues that Massachusetts law applies to Count II, misappropriation of trade secrets under Massachusetts common law; Count III, misappropriation of trade secrets under the Massachusetts Trade Secrets Act; and Count VIII, violation of the Massachusetts Unfair and Deceptive Practices Act. *See* Opp'n at 17-19. TargetSmart also cites Massachusetts law in responding to Count VI, unjust enrichment, and Count IX, defamation. *See id.* at 18-20. The Court will assume that for all counts, TargetSmart maintains that Massachusetts has an interest in having its law applied.

Several of the counts alleged in TargetSmart's Second Amended Complaint are not available under D.C. law. "Where a cause of action exists in one jurisdiction, but is not recognized as a cause of action in another, it is axiomatic that a true conflict of law exists." *Adams v. Martinsville Dupont Credit Union*, 573 F. Supp. 2d 103, 110 (D.D.C. 2008).

For instance, if brought under D.C. law, Counts II and VI would be preempted by the D.C. Uniform Trade Secrets Act. As with the trade-secret statutes of a number of states,[12] D.C.'s law is based on the Uniform Trade Secrets Act (UTSA). *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 77 n.9 (D.D.C. 2007). The stated aim of the D.C. Uniform Trade Secrets Act is "to make uniform the law with respect to trade secrets among the District of Columbia and those states enacting [the UTSA]."[13] D.C. Code § 36-408. The D.C. law preempts all claims predicated on the misappropriation of trade secrets, "including both common law and statutory causes of action . . . unless they are contractual or criminal in nature." *See DSMC*, 479 F. Supp. 2d at 84 (quoting *MicroStrategy, Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1363-64 (Fed. Cir. 2005)); *see also* D.C. Code § 36-407 (stating that the DCUTSA "supersedes conflicting tort, restitution and other law of the District of Columbia providing civil remedies for misappropriation of a trade secret," but not contractual or criminal remedies).

Count II presents such a misappropriation claim and is plainly preempted by the D.C. Uniform Trade Secrets Act. In addition, Count VI alleges that, "[a]s a result of Defendants' misappropriation and use of TargetSmart's confidential and proprietary Information, Defendants received a benefit from TargetSmart, including but not limited to, business opportunities and technical development savings and shortcuts, for which Defendants have not paid and to which they were not entitled." SAC ¶ 124. Count VI is also based on misappropriation of Non-Public Information and forestalled by D.C. law. This Court agrees with those courts elsewhere which have dismissed unjust enrichment claims as preempted by the applicable state-law trade secrets

---

[12] *See, e.g.*, Virginia Uniform Trade Secrets Act, Va. Code Ann. § 59.1-336 *et seq.*; Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.*

[13] A bill has introduced into the Massachusetts Legislature which would adopt the Uniform Trade Secrets Act but it has not yet been enacted. *See* H.B. 1451, 191st Gen. Ct. (Mass. 2019).

act, when such state laws are based on the Uniform Trade Secrets Act. *See, e.g.*, *SBS Worldwide, Inc. v. Potts*, No. 13-C-6557, 2014 WL 499001, at \*7 (N.D. Ill. Feb. 7, 2014) (dismissing claims of tortious interference with business relations, unfair competition, and unjust enrichment as preempted under Illinois trade secrets act); *BioD, LLC v. Amnio Tech., LLC*, No. 2:13-cv-1670-HRH, 2014 WL 268644, at \*9-10 (D. Ariz. Jan. 24, 2014) (dismissing unjust enrichment and tortious interference claims as preempted by Arizona trade secrets act); *Hutchison v. KFC Corp.*, 809 F. Supp. 68, 71 (D. Nev. 1992) (dismissing plaintiffs' unjust enrichment and unfair competition claims based on allegations that defendant misappropriated plaintiffs' trade secrets because claims were preempted by Nevada trade secrets act). Since the D.C. Uniform Trade Secrets Act aims to make trade-secrets law uniform among the District of Columbia and other states adopting the Uniform Trade Secrets Act, "it is appropriate for this Court to consider how courts in other jurisdictions have interpreted different states' trade secret acts." *DSMC*, 474 F. Supp. 2d at 77 n.9.

In similar fashion, Count VIII, which alleges violations of the Massachusetts Unfair and Deceptive Practices Act, finds its closest analog in the D.C. Uniform Trade Secrets Act. Although one possible comparable statute is the D.C. Consumer Protection Procedures Act (CPPA), D.C. Code § 28-3904, which forbids a variety of "unfair or deceptive trade practice[s]," and appears analogous to the Massachusetts law barring "an unfair method of competition or an unfair or deceptive act or practice," Mass. Gen. Laws ch. 93A, § 11, TargetSmart could not bring a CPPA claim because the facts underlying Count VIII are indistinct from those alleging misappropriation of trade secrets. *Cf.* SAC ¶ 136 (incorporating all previous paragraphs of the Second Amended Complaint and not adding new factual content). Therefore, since Count VIII seeks "a civil remedy for misappropriation of trade secrets," *see DSMC*, 479 F. Supp. at 84, it

can only be brought under the D.C. Uniform Trade Secrets Act.  *See Taxinet Corp. v. Leon*, No.

16-24266-CIV, 2018 WL 3405243, at *5 (S.D. Fla. July 12, 2018) (finding that claim under

Florida Deceptive and Unfair Trade Practices Act was preempted by the Florida trade secrets act

because the allegations underlying both claims were "materially indistinct").[14]

While a "true conflict" exists for several state law claims,[15] further application of

D.C.'s choice-of-law-principles cause the Court to conclude that it must apply D.C. law.  All of

the state law claims sound in tort for choice-of-law purposes.[16]  To determine which

jurisdiction's law applies in tort cases, District of Columbia courts consider four factors:  "(1) the

place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3)

the domicil[e], residence, nationality, place of incorporation and place of business of the parties;

and (4) the place where the relationship is centered."  *Oveissi*, 573 F.3d at 842 (quoting

Restatement (Second) of Conflict of Laws § 145(2) (internal quotation marks omitted)).

---

[14] In its Surreply, TargetSmart suggests that the D.C. trade secrets law does not extinguish TargetSmart's Massachusetts claim because, *inter alia*, "TargetSmart alleges not only that Catalist misappropriated TargetSmart's trade secrets, but also that Catalist misappropriated TargetSmart's other confidential business and financial information."  Surreply at 4.  The argument fails to appreciate the scope of uniformity here:  The Uniform Trade Secret Act's "preemption provision has generally been interpreted to abolish all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status."  *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004).

[15] The Court need not examine any substantive differences between D.C. and Massachusetts defamation law (Count IX), or differences between the D.C. and Massachusetts trade secrets acts (Count III).  As explained below, D.C. law will be applied to Count III and Count IX regardless of whether a "true conflict" exists.

[16] "Although claims for unjust enrichment might have more in common with contract claims than torts, *Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 280 (D.C. Cir. 2009), courts have tended to treat them as torts for choice of law purposes."  *Chambers v. NASA Fed. Credit Union*, 222 F. Supp. 3d 1, 9 (D.D.C. 2016) (citing *Intelect Corp. v. Cellco P'ship GP*, 160 F.Supp.3d 157, 177 (D.D.C. 2016)).

TargetSmart and Catalist are both D.C. companies and the alleged injury to TargetSmart—"reputational damage, lost business opportunities, and lost profits," *see* SAC ¶ 81— occurred in D.C. *See Guttenberg v. Emery*, 41 F. Supp. 3d 61, 71 (D.D.C. 2014) (finding that the injury occurred in D.C. when plaintiffs "allege[d] harm to their business" that was located and incorporated in D.C.). Therefore, the factors considering "the place where the injury occurred" and the "domicile of the parties" favor D.C. law.

The remaining two factors considering "the place where the conduct causing the injury occurred" and "the place where the relationship is centered" also favor applying D.C. law. The gravamen of TargetSmart's Second Amended Complaint is that Catalist and GHP "devised and executed a scheme to induce TargetSmart to disclose confidential and proprietary information [from D.C.] and misuse that Information [by Catalist in D.C.] to damage and/or unlawfully compete with TargetSmart." SAC Introductory Statement. The alleged scheme was executed through a misrepresentation made by GHP to TargetSmart about Catalist's identity. TargetSmart claims that Catalist either directed or ratified GHP's conduct. *See id.* ¶ 20. In cases involving alleged misrepresentations or fraud, "both the D.C. Court of Appeals and the D.C. Circuit have looked to the place where the statements at issue 'were formulated and transmitted.'" *Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of the U.S.*, 258 F. Supp. 3d 1, 10 (D.D.C. 2017) (citing *In re APA Assessment Fee Litig.*, 766 F.3d 39, 54 (D.C. Cir. 2014); *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 181 (D.C. 2006)).

The Second Amended Complaint does not describe any location at which Catalist participated in a scheme to make misrepresentations to TargetSmart. GHP, not Catalist, made initial contact with TargetSmart in December 2017 about a potential transaction purportedly backed by wealthy donors. *Id.* ¶ 24. Catalist was not present at GHP's first meeting with

TargetSmart in Boston, during which GHP again claimed that it represented wealthy donors. *See id.* ¶¶ 31-33. The only meeting between Catalist and TargetSmart took place in Washington, D.C. in March 2018. *See id.* ¶¶ 49-50.

Since TargetSmart does not describe the location at which Catalist allegedly planned or carried out the scheme to misappropriate trade secrets, it is reasonable to infer that some or all of Catalist's actions were accomplished from Catalist's principal place of business in Washington, D.C. *See Boomer Dev.*, 258 F. Supp. at 10-11 (noting that when neither the complaint nor the parties suggested where defendant conceived of or transmitted misrepresentations, it was a reasonable inference that actions took place from defendant's D.C. headquarters).

The Second Amended Complaint also does not specify the place from which Catalist disseminated or otherwise misused the Non-Public Information that it received through GHP. Nor does the Second Amended Complaint describe the location from which Catalist allegedly made defamatory statements about TargetSmart. Therefore, it is reasonable to infer that these activities were conducted from Catalist's D.C. headquarters.

Indeed, Judge Woodlock concluded that the complaint before him indicated that "[t]he only contact that Catalist clearly had with the Commonwealth of Massachusetts was its relationship with GHP." *TargetSmart*, 366 F. Supp. 3d at 211. TargetSmart claims that the Letter Agreement between GHP and Catalist provided the basis of the alleged scheme to acquire TargetSmart's trade secrets. *See* SAC ¶¶ 13-20. While Catalist's relationship with GHP and the Letter Agreement may "provide context and explanation for how Catalist was able to access TargetSmart's trade secrets," *TargetSmart*, 366 F. Supp. 3d at 211, the existence of that relationship between the two businesses does not show that Catalist's misconduct occurred in

Massachusetts or that the relationship was centered in Massachusetts. This conclusion is augmented by the specification in the Letter Agreement that GHP was not an employee or agent of Catalist and would perform services as an "independent contractor." *See* Letter Agreement at 4, § 6.

Perhaps recognizing the lack of Massachusetts contacts attributed to Catalist in the Second Amended Complaint, TargetSmart has attempted to use its supplemental opposition brief to introduce additional Massachusetts connections. TargetSmart asserts that subsequent to Judge Woodlock's transfer order, "merits discovery has revealed that GHP and Catalist met in Massachusetts to develop their scheme and plan and that it was implemented in and from Massachusetts." Suppl. Opp'n at 5. These allegations are not properly before the Court. The Court cannot consider this new information in testing the legal sufficiency of the Second Amended Complaint against Catalist's motion to dismiss, because "'plaintiff failed to include these allegations in [its] complaint, and [a] plaintiff may not amend [the] complaint by the briefs in opposition to a motion to dismiss.'" *Carter v. Carson*, 241 F. Supp. 3d 191, 197 (D.D.C. 2017) (citing *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010)); *see also Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").

The Court agrees with Judge Woodlock and finds that the District of Columbia has the stronger interest in having its law applied. Therefore, District of Columbia law governs the state law claims against Catalist.[17]

---

[17] This Memorandum Opinion does not address whether TargetSmart can maintain claims against GHP under Massachusetts state law.

### C. Count I (DTSA)

The Defend Trade Secrets Act permits plaintiffs to bring private causes of action if they "own[ ] a trade secret that is misappropriated."  18 U.S.C. § 1836(b)(1).  A "trade secret" includes "all forms and types" of information that "derives independent economic value . . . from not being generally known" when "the owner . . . has taken reasonable measures to keep such information secret."  *Id.* § 1839(3).  Misappropriated means either "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person."  *Id.* § 1839(5)(A)-(B).  The term "improper means" is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  *Id.* § 1839(6)(A).

The "disclosure or use" category of misappropriation further requires that the discloser or user:

> (i) used improper means to acquire knowledge of the trade secret;
>
> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>
>> (I) derived from or through a person who had used improper means to acquire the trade secret;
>>
>> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>>
>> (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
> (iii) before a material change of the position of the person, knew or had reason to know that—
>
>> (I) the trade secret was a trade secret; and

(II) knowledge of the trade secret had been acquired by accident or mistake.

*Id.* § 1839(5).

Catalist does not dispute TargetSmart's allegations with respect to whether it sufficiently pleads a "trade secret" as the term is defined in the Defend Trade Secrets Act. Rather, Catalist argues that Count I fails because TargetSmart has not shown that Catalist acquired any trade secrets improperly. In support, Catalist identifies perceived inconsistencies between the Second Amended Complaint and the original Complaint. TargetSmart's initial Complaint alleged that "GHP had blatantly misrepresented to Ms. Quinn and Mr. Steitz [of Catalist] that TargetSmart had asked each of them to sign a mutual NDA." Catalist Mot. at 13; *See* Compl. [Dkt. 1] at ¶ 50. Catalist argues that this allegation is "flatly inconsistent with the claim that Catalist 'used any improper means to acquire' information from TargetSmart." (quoting 18 U.S.C. § 1839(5)). Catalist further notes that TargetSmart has attempted to correct errors in its initial Complaint by removing the allegation that GHP lied to Catalist about the existence of an NDA and, instead, adding the following: "The supposed [NDAs sent by GHP to Catalist] so blatantly misrepresent their true nature that Catalist knew or should have known that TargetSmart did not request that Catalist or any of its representatives sign an NDA with TargetSmart." *See* Catalist Mot. at 13-14; SAC ¶ 61. Catalist argues that this new allegation "directly contradicts TargetSmart's original allegation" that GHP had misled Catalist's representatives about the existence of the Mutual NDA. Catalist Mot. at 14. It concludes that "[t]hese contradictory and conclusory allegations," when viewed together, fail to state a claim for misappropriation. *Id.*

Contrary to this argument, "[i]t is hornbook law that an amended complaint supersedes the prior complaint and renders it of no legal effect." *Halldorson v. Sandi Grp.*, 934

F. Supp 2d 147, 156 (D.D.C. 2013); *see also* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2019). Here, the Second Amended Complaint "is now the operative complaint due to its superseding nature." *See Adams v. Quattlebaum*, 219 F.R.D. 195, 197 (D.D.C. 2004). Thus, for purposes of Catalist's motion, only the allegations in the Second Amended Complaint are relevant.[18]

  The question remains whether the Second Amended Complaint plausibly shows that Catalist acquired trade secrets "improperly." The Defend Trade Secrets Act defines "misappropriation" to include, *inter alia*, "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," or "disclosure or use of a trade secret" when the discloser or user "knew or had reason to know" that knowledge of the trade secret was "derived from or through a person who had used improper means to acquire the trade secret." *See* 18 U.S.C. § 1839(5). The term "improper means" is defined to include misrepresentation. *See* 18 U.S.C. § 1839(6)(A).

  The Second Amended Complaint alleges that GHP misrepresented the identity of its client when GHP approached TargetSmart about a potential transaction in December 2017 and that GHP falsely told TargetSmart that it had been retained by wealthy political donors who wanted to combine TargetSmart with other companies, when GHP's true client was Catalist. SAC ¶¶ 24-25. TargetSmart asserts that as a result of its initial conversation with GHP, it entered into a Mutual NDA with GHP and sent Non-Public Information to GHP including details about its products, data, services, and clients. *Id.* ¶ 32. TargetSmart further alleges that when it

---

[18] Catalist cites two cases in which courts highlighted factual inconsistencies within a single complaint. *See Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016); *Day v. Nakamura*, No. 95-1475, 1995 WL 391961, at *2 (1st Cir. June 30, 1995). Neither is apt because Catalist is comparing separate complaints.

met with GHP in December 2017, GHP again falsely stated that it represented individual donors. *Id.* ¶ 33. TargetSmart claims that it sent additional Non-Public Information to GHP following the meeting in exchange for GHP's promise to provide a rough approximation of the proposed purchase price. *Id.* ¶¶ 37-39. GHP only revealed it represented Catalist in March 2018, during a meeting between GHP, TargetSmart, and Catalist. *Id.* ¶¶ 50, 52. Only at that time was TargetSmart told that Mr. Steitz and Ms. Quinn had received its Non-Public Information. *Id.* ¶ 55.

The Second Amended Complaint further alleges that Catalist and GHP had agreed to a Letter Agreement dated November 3, 2017, by which GHP pledged to "'serve as advisor [to Catalist] in connection with the potential acquisition of a specific, pre-identified target company,'" *id.* ¶ 13, and that TargetSmart was the "pre-identified target company.'" *Id.* ¶ 14. The Letter Agreement stated that GHP would keep Catalist "'informed of the activities undertaken by GHP'" and "'all performance of Services required of GHP'" under the Agreement. *Id.* ¶ 19.

Accepting TargetSmart's well-pled allegations as true and drawing reasonable inferences from those allegations in TargetSmart's favor, *see Sissel*, 760 F.3d at 4, TargetSmart has plausibly alleged that GHP obtained TargetSmart's Non-Public Information through misrepresentations that it represented wealthy individual political donors when it actually represented Catalist and that GHP, as it had promised to do, kept Catalist apprised of its activities so that Catalist was aware that GHP had failed to disclose Catalist's identity to TargetSmart. The Second Amended Complaint plausibly alleges that Catalist then received TargetSmart's Non-Public Information from GHP and that Ms. Quinn, Catalist's CEO, shared this information

with others. These allegations have sufficiently pled that Catalist obtained TargetSmart's Non-Public Information through improper means.[19]

Catalist argues separately that the Second Amended Complaint does not allege sufficient facts to support the allegation that Catalist disclosed any TargetSmart Non-Public Information. Rather, "TargetSmart relies on speculation, conjecture, and innuendo to imply that Catalist released some unidentified subset of the confidential information to an unidentified reporter." Catalist Mot. at 14 (citing SAC ¶ 41).

The Court disagrees. The Second Amended Complaint alleges that a writer with ties to Ms. Quinn contacted TargetSmart employees in February 2018 and asked several questions about TargetSmart's relationships with specified clients. SAC ¶ 41. These questions are allegedly "based upon [N]on-[P]ublic Information provided to GHP and covered by the Mutual NDA." *Id.* It is further alleged that this connection was confirmed by the manner in which a Catalist Board Member said that "he did not agree with Ms. Quinn's actions, and promised that the inquires would stop." *Id.* ¶ 44. According to the Second Amended Complaint, Catalist itself acknowledged in April 2018 that Ms. Quinn and Mr. Steitz had received Non-Public Information, *id.* ¶¶ 67-68, but Catalist failed to state that Ms. Quinn had not shared the information, although it so represented Mr. Steitz' innocence. *Id.* ¶ 68.

---

[19] It is noteworthy that Catalist submitted two form non-disclosure agreements that appear to be signed by Ms. Quinn and Mr. Steitz. *See* Ex. 2, Catalist Mot., Non-Disclosure Agreements. Neither of these documents is signed by TargetSmart and the Second Amended Complaint alleges that Catalist never received copies signed by TargetSmart. SAC ¶ 61. These incomplete documents do not alone negate the inference that Catalist acquired Non-Public Information through improper means.

Construing the Second Amended Complaint as accurate and giving all reasonable inferences in favor of the non-movant, the Court finds that TargetSmart has stated a plausible claim that Catalist wrongly disclosed its Non-Public Information.

The Court will deny Catalist's Motion to Dismiss Count I.

**D. Count II (Misappropriation of Trade Secrets) and Count VI (Unjust Enrichment)**

Count II alleges misappropriation of trade secrets and Count VI alleges unjust enrichment therefrom. The Court has found that these counts must be analyzed under District of Columbia law and that they are appropriately considered under the D.C. Uniform Trade Secrets Act. For these reasons only, the Court will grant Catalist's Motion to Dismiss Counts II and VI.

**E. Count IX (Defamation)**

To bring a defamation case under District of Columbia law, a plaintiff must allege facts showing:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013) (citations omitted). A statement is defamatory "if it tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Afro-American Publ'g Co. v. Jaffe*, 366 F.2d 649, 654 (D.C. Cir. 1966) (footnote and citations omitted).

The Second Amended Complaint alleges, "[o]n information and belief, Catalist executives falsely told TargetSmart's customers and other third parties that TargetSmart was 'for

sale,' suggesting that TargetSmart's actual and potential clients should not enter into long-term contracts with TargetSmart." SAC ¶ 75. Catalist argues that TargetSmart has failed to plead the defamation claim with sufficient particularity, including specifying who made the alleged statements, to whom they were made, and when they were made. Catalist Mot. at 18.

"While there is no heightened pleading standard for defamation claims in the District of Columbia, *see Croixland Props. Ltd. Partnership v. Corcoran*, 174 F.3d 213, 215 n.2 (D.C. Cir. 1999), such claims must be pleaded with particularity and specify the person or persons to whom the statements were made or published." *Vreven v. Am. Ass'n of Retired Persons*, 604 F. Supp. 2d 9, 15 (D.D.C. 2009). Courts must assess whether pleadings adequately identify the recipients of defamatory statements so that the defendant has "fair notice" of the claims and can properly respond. *See id.* at 15-16 (dismissing claim in which plaintiff alleged that defendant's CEO made defamatory statements to "others at AARP" as well as "to unnamed people outside of AARP," because plaintiff failed to provide "fair notice" by neglecting to "identify[] anyone to whom [the CEO] spoke or wrote by name, by department, or by any other identifying feature") (citing *Twombly*, 550 U.S. at 555 n.3)); *see also Oparaugo v. Watts*, 884 A.2d 63, 77-78 (D.C. 2005) (finding that allegation that a defamatory letter was published to "various persons, both private and public, in Nigeria" was too broad to provide fair notice to enable the opposing party to prepare an answer).

Here, TargetSmart has not identified any person to whom Catalist has made the alleged defamatory statements to give "fair notice" of its claim. *Cf. Twombly*, 550 U.S. at 555 n.3. Absent additional facts, the allegations are too vague.[20]

---

[20] For this reason, the Court need not address whether the alleged statements conveyed a defamatory meaning or were substantially true. *See* Catalist Mot. at 19-20.

Count IX will be dismissed.

**F. Counts III and VIII (Massachusetts Statutory Misappropriation Claims)**

This Court has already found that the law of the District of Columbia applies to all of the state-law claims against Catalist. Therefore, the Court will grant Catalist's Motion to Dismiss Counts III and VIII, which allege misappropriation under Massachusetts state law, on choice-of-law principles. *See Felder v. WMATA*, 174 F. Supp. 3d 524, 528-32 (D.D.C. 2016) (dismissing Virginia Wrongful Death Act claim because choice-of-law rules favored applying D.C. law); *Margolis v. U-Haul Int'l, Inc.*, 818 F. Supp. 2d 91, 100-07 (D.D.C. 2011) (applying choice of law rules to choose between D.C. and Maryland consumer protection law).

## IV. CONCLUSION

For the reasons stated, Catalist's Motion to Dismiss, Dkt. 38, will be granted in part and denied in part without prejudice. A separate Order accompanies this memorandum Opinion.

Date: September 19, 2019

_____
ROSEMARY M. COLLYER
United States District Judge